JOHN PALMER, Appellant, v. REEVES & COM-
PANY, Respondent.

**Kansas City Court of Appeals, November 15, 1909.**

1. **CONTRACT: Breach of Warranty: Sales.** The provisions of
   a contract for farm machinery requiring notice by registered
   letter to be given in case of failure of the machinery to com-
   ply with the warranties, is waived where notice was received
   by defendant through an unregistered letter of complaint and
   defendant acted thereon by sending one of its agents to re-
   pair the defects.

2. ———: ———: ———: **Waiver.** Where defendant notified
   plaintiff in effect that it would not rescind the contract and
   that it would hold him to its terms, he was not bound to re-
   turn the machinery to the agent, as the notification amounted
   to a waiver of the return of the machinery, and rendered un-
   necessary compliance by plaintiff with a provision of the
   contract of sale, requiring plaintiff to return the machinery,
   to defendant's agent, if not satisfactory.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller,*
Judge.

REVERSED AND REMANDED.

*C. B. Sebastian* and *W. M. Williams* for appellant.

(1) The evidence established, beyond peradventure,
that the clover huller did not do good work. This ap-
pears, not only from the testimony of plaintiff's wit-
nesses, but also from that given on the part of the
defendant. So the judgment below cannot be sustained
on the ground that the machine complied with the war-
ranty. Miller Lock Co. v. Deihl Mfg. Co., 37 Pa. Sup.
Ct. 585. (2) Contracts of the character under con-
sideration in this case "prepared by a vendor for his
own protection will be construed most strongly against
such vendor." Thresher Co. v. Vinckel, 121 N. W. 431.
(3) The letters reached the defendant, notifying it that

the machine was not doing good work and that its expert had been unable to set it right. "The mere fact that a notice of the failure of a machine to work as warranted is not given in the manner prescribed by the written warranty . . . is of no avail as a defense, where the company to whom such notice is to be given acts under some notice given under the warranty and sends an expert to examine the machine, and does everything that it could have done had such notice been properly sent." Buchanan v. Threshing Mach. Co., 116 N. W. 335; Hein v. Milderbrandt, 115 N. W. 121; Thresher Co. v. Vinckel, 121 N. W. 431; Harrison v. Russell, 87 Pac. 784; Peters v. Plano Mfg. Co., 110 N. W. 783. (4) The failure to return the machine constitutes no defense. (a) There was no local agent at Columbia, to whom it could be returned. It was delivered to the plaintiff from the cars. (b) The defendant positively refused to accept the machine and demanded that plaintiff should keep it, and announced that it would enforce the payment of his note to become due November 1st. This was a waiver of the requirement that the machine should be returned. Machine Co. v. Mann, 27 Pac. 417; Walls v. Gates, 4 Mo. App. 1; Osborne v. Mullikin, 88 Mo. App. 350; Padden v. Marsh, 34 Iowa 522.

*Charles J. Walker* for respondent.

(1) The rights and liabilities of the parties are to be determined by their contract of September 7, 1905. All prior negotiations were merged in this final contract. Dexter v. MacDonald, 196 Mo. 391; Strother v. Cooperage Co., 116 Mo. App. 526; Kilpatrick v. Wiley, 197 Mo. 164; Text-Book Co. v. Lewis, 130 Mo. App. 158; Thompson, Payne & Co. v. Irwin, Allen & Co., 42 Mo. App. 419; Threshing Machine Co. v. Hall, 73 S. W. 835. (2) No fraud, trick or device was used by defendant to prevent plaintiff from reading the contract for the purchase of the huller and he is bound by its terms. No plea of fraud or mistake is alleged in plaintiff's

petition and no fraud proven. Poindexter v. McDowell, 110 Mo. App. 236; Catterlin v. Lusk, 98 Mo. App. 182; M'fg. & Importing Co. v. Carle, 116 Mo. App. 591; Harvesting Machine Co. v. Arnold, 76 S. W. 323; Threshing Machine Co. v. Hall, 73 S. W. 835; Creamery & Supply Co. v. Hill, 113 N. W. 466; Reed v. Coughran, 111 N. W. 559; Standard Mfg. Co. v. Hudson, 113 Mo. App. 344; McNealy v. Baldridge, 106 Mo. App. 11; Johnston v. Insurance Co., 93 Mo. App. 580; Insurance Co. v. Winn, 125 Mo. App. 384; Graham v. Insurance Co., 110 Mo. App. 95. (3) The rule now prevailing in this State is, that when a party, without fraud practiced upon himself signs a contract he is conclusively presumed to know its contents and to accept the terms thereof, and the fact that he did not read it does not alter the rule. Catterlin v. Lusk, 98 Mo. App. 187; Johnston v. Insurance Co., 93 Mo. App. 580; Van Ravenswaay v. Insurance Co., 89 Mo. App. 77; Och v. Railroad, 130 Mo. 44; Crim v. Crim, 162 Mo. 544. (4) A warranty may be absolute or conditional. The parties in this case made their own contract and the court will not make a new contract for them. Nichols, Shepard & Co. v. Larkin, 79 Mo. 270; Nichols-Shepard Co. v. Rhoadman, 112 Mo. App. 299; Bank v. Barts, 130 Mo. App. 635; Heagney v. Threshing Machine Co., 96 N. W. 175; J. A. Fay & Eagan Co. v. T. J. Dudley & Sons, 58 S. E. 826; Gaar, Scott & Co. v. Hodges, 90 S. W. 580; Shearer v. Gaar, Scott & Co., 90 S. W. 684; Equitable Mfg. Co. v. Stevens, 60 S. W. 350.

BROADDUS, J.—This is an action for a breach of warranty by the defendant upon the sale of a certain machine consisting of a clover huller, feeder and stacker.

The contract was entered into on September 7, 1905, and the machine was delivered on September 11th, two days thereafter. The contract provided for a payment of $300 cash on delivery, and $250 to be paid on the 1st day of November evidenced by a note of plaintiff and secured by chattel mortgage on the property.

The contract contained the following warranty: "The machinery ordered is to be well made, of good material, and with proper care and management, to do as good work as any other machine of the same size and manufactured for a like purpose." The plaintiff paid the $300 and gave his note for the $250 as specified in the contract and executed a mortgage on the machine to secure the payment of the note.

After the recitation of the warranty the writing further reads: "but if inside of six days from the day of its first use, the said machinery fails to fill its warranty, written notice shall be given Reeves & Company by registered letter, and also written notice to the local agent from whom the same was purchased, stating wherein it fails to fill the warranty, and if it be of such a nature that remedy cannot be suggested by letter, a reasonable time shall be allowed to remedy the defects, if any there be, and an opportunity offered for a trial thereafter, the purchaser rendering necessary and friendly assistance. Defects or failures in one part shall not condemn any other part of attached machine, and if after a fair opportunity to remedy a defect the part or parts containing such cannot be made to fill the warranty that part which fails shall be returned immediately by the purchaser to the place where it was received, with the option of the company either to furnish another machine, or part, in place of the machine or part so returned, or credit the settlement of the same. If Reeves & Company shall furnish another machine or part in place of the one returned, the terms of this warranty shall be held to be fulfilled and the company shall be subject to no further liability under this order. It is hereby expressly agreed that all claims for damages against Reeves & Company by reason of non-performance of machinery are hereby waived.

"It is mutually, agreed that the failure of the purchaser to give said written notice of defects, as above provided, within six days from the day of its first use,

or to return the said machinery or part to the place where it was received within six days from the day of its first use shall be conclusive evidence of the fulfillment of the warranty and the full satisfaction to the purchaser, who agrees to make no claim thereafter against Reeves & Company or to make any defense to the notes given therefor on account of any breach of the warranty. It is also expressly agreed that if at any time after the expiration of the six days from the date of its first use, Reeves & Company should furnish to the purchaser any improvements or attachments for said machinery, or replace any old parts with new, or should the purchaser notify Reeves & Company in any wise whatever, of any imperfection in said machinery, and if upon receipt of such notice Reeves & Company or any agent or employee should act thereon and remedy or attempt to remedy, such imperfections, the so doing of all such acts will not extend the liability of Reeves & Company under this warranty beyond the six days from the day of the first use." There are other iron-clad provisions in the writing which it is not necessary to notice.

The machine was first put in use on the 22d day of September. One of defendant's agents was present to start it, but it failed to do good work. He claimed that the clover was too wet and that he would have to wait until it should get dry and promised to come back later. He returned on the 26th and failed again to make the machine do good work. It was then moved to another farm where it was started to work again by defendant's agent on the 27th of September, but it failed again to do proper work. On the 28th, the next day, plaintiff endeavored to run the machine without the aid of defendant's agent, but it still failed to act so as to do good work; whereupon on the same day, he called up the defendant's agent then in Columbia and told him the machine would not do good work. On the same day

he wrote a letter addressed to the company at its home office stating that the machine would not do good work, specifying wherein it failed. This letter was not registered. On September 30th defendant answered acknowledging receipt of his letter, and informed plaintiff that the matter would be referred to the Kansas City office, where it would receive prompt attention. On the 29th of September the defendant's agent came back and after testing the machine said he had done all he could and that it was doing as well as it could under the conditions. On the next day, the 30th of September, plaintiff again wrote to defendant stating that he had given the clover huller a fair trial; that he had tried to use it for five days; that it's agent had failed to make it work successfully, again stating the defect; and asked what he should do with it as he wished to return it, demanding that defendant return the $300 he had paid. On the 2d day of October defendant acknowledged the receipt of this letter, stating that the matter would be referred to the Kansas City office and further: "We don't know whether or not the terms of warranty on the machine has expired, but would state that we are not very particular about a thing of that sort, desiring always to look after our customers in proper shape." On the 3d of October the agent of defendant at Kansas City wrote to plaintiff that the huller if handled properly would do the work as guaranteed, and that: "We have your order in which the guarantee is fully set forth, and we have your settlement, and unless we learn something to the contrary as to the working of the huller from what we now know, the guarantee has been absolutely fulfilled and you have no complaint. . . . Your note for $250 will be due November 1st, and we expect the same will be met promptly when due." The plaintiff did nothing more in the way of returning the machine. When the note became due the mortgage was foreclosed and at the sale defendant became the purchaser.

Palmer v. Reeves & Co.

The finding and judgment were for the defendant and plaintiff appealed. There were no declarations of law asked or given by the court, and no finding of facts. The case is therefore here upon the whole record.

There can be little or no dispute but what the machine failed to answer the purpose intended. The evidence is all one way. It is true the defendant's agent claimed that the clover was too wet for the machine to operate successfully. But it was tried upon different material at different times and places with the same result. The language of the warranty is not limited in its application to any particular condition of the clover to be hulled as to dryness or dampness. If such was the intention defendant should have specified in that particular. From the very nature of things it may be safely inferred that the condition of clover after it is harvested is subject to change of temperature and the condition of the atmosphere. If the atmosphere be warm and damp the clover would be affected thereby and to some extent would be damp. On the contrary if the weather is fair and the atmosphere dry the clover would necessarily be drier. At the time plaintiff first attempted to use the machine under the supervision of defendant's agent, it is claimed as we have seen that the clover was wet. And at all the subsequent trials it is claimed that the same condition existed. It is to be concluded from these facts that the huller would only perform good work while the clover was in a certain condition as to being dry. Just how dry it does not appear. The contract does not say. It seems to us that a machine that would not work well under ordinary conditions as to dampness or dryness of the material, would, in this climate be very uncertain and unsatisfactory, and would be of little or at least uncertain value. But as the contract does not include any such specification the matter need not be further noticed.

The plaintiff's failure to give notice to the local agent, and to the corporation by registered letter, was

waived by the defendant who actually received the letter and acted upon the notice therein contained by sending one of its agents for the purpose of rectifying the defect. "Every purpose of a registered letter was accomplished by the letter received as defendant acted upon it." [Buchanan v. Minneapolis Threshing Machine Co. (North Dakota), 116 N. W. 335; Hein v. Milderbrandt (Wis.), 115 N. W. 121; and Harrison v. Russell (Idaho), 87 Pac. 784.]

After defendant notified plaintiff in effect that it would not rescind the contract and that it would hold him to its terms, he was not bound to return the machine to the agent at Columbia. It amounted to a waiver of a return of the machine. [Walls v. Gates, 4 Mo. App. 1; and Osborn v. Mullikin, 88 Mo. App. 350.] The rule is succinctly stated in Padden v. Marsh, 34 Iowa 522, that: "Where by the terms of a warranty under which a reaping machine was sold, it was stipulated that, in case it failed to work as warranted, it was to be returned by the purchaser to a particular place, it was held, that a notification by the seller to the buyer that he would not receive the machine back excused the buyer from making an effort to return it."

But it is insisted that plaintiff should at least have returned the defective part of the machine and give defendant the option either to refund its value or substitute machinery that would fill the warranty. It is held on a similar contract: "that in case of a breach of warranty the buyer should immediately return the defective machinery and the seller should have the option either to furnish another machine or return the purchase money, the buyer, was bound to elect within a reasonable time whether he would return the machinery and claim cancellation of the purchase money notes or the delivery of proper machinery in lieu of that found deficient. And his failure to do so waived the breach. [Gaar Scott & Company v. Hodges (Ky.), 90 S. W. 580; and so is it held in Heageny v. J. I. Case Threshing

Machine Company, 96 N. W. 175.] These cases are not in conflict with those last cited, because there was no waiver in either of the provisions of the contract for a return of the machine, and the conclusions only amount to declarations that the purchaser must comply with the stipulations contained in the guaranties, a conclusion which is not to be denied.

It was argued that as the contract was devisable defendant was under no obligation to take back any part of the machine that fulfilled the contract. That is to say, if there were no defects in the stacker and feeder the plaintiff was bound by the contract to keep them. It is true these were devisable parts of the machine which had either proved defective the defendant upon notice had the right to remedy, yet respondent has left out of consideration that these devisable parts went to constitute the whole, and that without the huller they were of no value whatever to plaintiff. What use could he have had for a feeder without the huller to receive the feed or what material could he have had to stack until the clover passed through the huller are matters which the argument has left out of consideration.

We believe the finding and judgment is not sustained by the evidence and the law for which reason the cause is reversed and remanded. All concur.