PEET STOCK REMEDY COMPANY, Appellant, v. R. W. BRUENE, Appellee.

No. 39473.

APRIL 14, 1930.

132

*Kimball, Peterson, Smith & Peterson,* for appellant.

*Tinley, Mitchell, Ross & Mitchell,* for appellee.

FAVILLE, J.—Appellant sued in two counts, one seeking to recover on a promissory note in the principal sum of $200. The second count sued on was based on a note of $166.50. Appellee admitted liability on the note pleaded in Count 1 of the petition, and judgment was entered in favor of the appellant and against the appellee for the amount due on said note.

As to the note sued on in Count 2, the appellee pleaded a counterclaim in three counts, the first being based upon fraud, the second upon express warranty, and the third upon implied warranty. Each of said counts prayed recovery in the sum of $627, and each is based upon the contention that the appellant sold to the appellee certain cattle powders under a representation or warranty that said cattle powders would prevent cattle from having clover bloat, as a result of feeding upon sweet clover. The appellant answered the counterclaim, alleging that the note sued on was a renewal note, given after the appellee had suffered the loss of the cattle referred to, and denying the warranties as alleged, or that any claim for damages had been made within a reasonable time. Appellee filed a reply to this answer, alleging that he had notified appellant of his claim, and that the renewal note was given under an oral agreement to adjust his claim. Appellee's contention is that he bought certain powders from appellant which he claims were warranted to prevent cattle from bloating when fed on sweet clover, and that they did not prevent such bloating, and that a number of his cattle died, as a result of "clover bloat."

I. In instructing the jury, the court copied the voluminous pleadings in the case verbatim. This recital of the pleadings covers approximately thirteen and a third pages of the abstract.

 It sets out in full each of the three counts of appellee's counterclaim which plead the alleged fraud, express warranty, and implied warranty *in extenso*. The court also copied the reply and amendments thereto. After having thus set out the extensive pleadings verbatim, the court, in the next to the last instruction given, withdrew from the jury the consideration of Count 1 of appellee's counterclaim, on the question of fraud. This left the situation where the jury might readily have been confused because of the extensive allegations on the question of fraud which were embodied in a separate count of the counterclaim, and which were submitted to the jury by a copy of the pleadings, and which, after extensive instructions on the questions of express and implied warranty, were finally withdrawn from the consideration of the jury. This manner of copying the pleadings verbatim in instructions to a jury has been repeatedly condemned by this court. We have admonished trial judges that the practice must not be persisted in, and in our more recent cases have expressly reversed because of the submission of cases in this manner. It may be true that, in instances where the issues are briefly and concisely stated in the pleadings, a reversal would not necessarily follow because the issues were stated in the instructions in the substantial language of the pleadings. But such is not the case at bar. The pleadings here were voluminous and extensive, although the ultimate issue to be decided was comparatively narrow. The manner in which the pleadings were set out in the instructions in the instant case tended rather to complexity and confusion than to clarity and precision. Each count of the appellee's counterclaim pleaded a complete cause of action in and of itself, with full recitals to support the contentions of fraud, express warranty, and implied warranty, and the reiteration in each count of the facts relied upon in regard to said matter and the attendant damage claimed to have followed therefrom. Such reiteration was wholly unnecessary and improper, and especially so in view of the fact that the court subsequently withdrew one of the grounds of the counterclaim from the consideration of the jury. The action of the court in presenting the issues by copying the verbose and extensive pleadings, and especially in including therein one entire separate and distinct count, even though in the instructions it was subsequently withdrawn, was misleading

to the jury, and should not have been indulged in. *Veith v. Cassidy*, 201 Iowa 376; *Dunnegan & Briggs v. Chicago, R. I. & P. R. Co.*, 202 Iowa 787; *In re Estate of Dolmage*, 204 Iowa 231.

II. One of appellee's counterclaims was predicated upon the claim of an express warranty, to the effect that the appellant warranted to appellee that the powders sold to the appellee would  prevent cattle from bloating when they were fed on sweet clover. It was for breach of this warranty that recovery was sought. The court, in submitting this question to the jury, failed entirely to direct the jury's attention to the obvious fact that, before there could be any recovery for breach of the alleged warranty, the jury must find that appellee's cattle died from clover bloat, and from no other cause. The burden rested upon the appellee to establish such fact before he could recover under said counterclaim. The court did tell the jury it was for them to determine "whether or not said powders failed to comply with this warranty." Under the facts of this case, we do not think said instruction was such a specific guide to the jury as to fully and adequately advise them of their duties in the premises. Before the appellee would be entitled to recover on his counterclaim based upon said warranty, it was incumbent upon him to prove the terms and conditions of the said warranty, and to prove the facts showing wherein said warranty had been breached. It was these *facts* that the jury would be compelled to find from the evidence before they would be warranted in returning a verdict in behalf of the appellee, and it was not enough for the court to merely tell the jury in general terms that they must find that the powders sold "failed to comply with this warranty." The jury should not have been left to speculate or conjecture as to the cause of the death of appellee's cattle, but should have had proper and specific instructions, under the allegations and the evidence, that, before appellee could recover on his counterclaim, he must establish that his cattle died as a result of clover bloat, and not from any other cause.

III. Before appellee could recover on his counterclaim, it was incumbent upon him to establish by the evidence that he used the cattle powders in accordance with the instructions of appellant. The powders in question appear to have been de-

livered to appellee on May 7th or 8th, and placed in troughs. The cattle were turned into the sweet clover about the 14th or 15th of that month. When or how the cattle had access to the powders before going upon the clover, and whether the instructions given as to their use were obeyed, does not appear. Appellee claims that the appellant expressly warranted that the powders in question would prevent bloating in cattle that were feeding upon sweet clover. Before recovery could be had for damages because of breach of said warranty, it was essential that appellee establish that the cattle were in fact treated with the powders in accordance with the appellant's directions. Appellant could not be liable unless the cattle were treated as appellant required. The evidence of the appellee to the effect that he left this matter to the judgment of his hired man is scarcely sufficient to establish this essential link in appellee's proof. Appellant's motion for a directed verdict raised this objection. Upon the record, we are constrained to hold that it was well taken at that time. In any event, the matter was not covered by a proper instruction.

IV. The evidence shows that appellee renewed the note in suit after his cattle had died, and it is claimed that such renewal, with knowledge of the breach of warranty as claimed by him, was a waiver of his right to plead a breach of warranty.

The note in controversy was not given for cattle powder, except the sum of $21, included therein. Appellee does not deny liability on the note. Except for the item of $21, the note was  given for hog powders, for which appellee was liable. The appellee is not attempting to rescind any contract having reference to said note. His counterclaim grows out of an entirely separate and distinct transaction. The fact that appellee owed for the hog powders, and renewed his note given therefor, does not affect his right to counterclaim on his claim for damages growing out of an entirely separate transaction, even though he knew of said claim for damages at the time he renewed the note which he in fact owed, and which he was not attempting to repudiate or rescind. As bearing on the question, see *Rice v. Friend Bros. Co.*, 179 Iowa 355; *Bean v. Bickley*, 187 Iowa 689; *Reinertson v. Struthers*, 201 Iowa 1186.

The arguments have taken a somewhat wider range than

the errors relied upon for reversal would seem to warrant. We expressly reserve any pronouncement as to any matters not herein considered and discussed.

Whether the measure of damages for the breach of warranty could include more than the cost of the materials sold, or whether, in any event, it could include the loss of the cattle, is a question not before us, and no implication thereon is intended in the discussion of the opinion.

For the errors pointed out, the cause must be—*Reversed.*

Morling, C. J., and Evans, Kindig, and Grimm, JJ., concur.