No. 12,642.

EMERSON-BRANTINGHAM IMPLEMENT COMPANY *v.* MILLER
ET AL.
(12 P. [2d] 341)

Decided May 31, 1932.

Mr. FRANK L. GRANT, for plaintiff in error.

Messrs. TOLLES & COBBEY, for defendants in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

PLAINTIFF sued on promissory notes. Defendants admitted execution and delivery of the notes but alleged that they evidenced part of purchase price of a certain tractor bought of plaintiff, a purchase induced by plaintiff through false representations of its agents as to the efficient usability of the tractor, which representations defendants believed, and on which they relied; that the tractor was not as represented and warranted, and the representations of plaintiff in relation thereto were false, and that it was defective and could not be used. The defendants further answered that because the tractor was of no value to them, the consideration failed; and, counterclaiming, they sought to recover of plaintiff the sum of a note previously paid on the same account, $262.50, and other items. On issues joined the case was tried to a jury, which resolved against plaintiff and on defendants' counterclaim awarded $454.70, and in that sum judgment was entered.

There was testimony to the general effect that in the spring of 1928, defendants, farmers, were in the market for a tractor for use on a large ranch; that March 16, 1928, having previously explained to plaintiff's agents the conditions under which a tractor would be of use to them, and being assured that the tractor which plaintiff manufactured and proffered to sell was suitable for their requirements and would work satisfactorily, defendants gave a written order for the tractor described and agreed to pay therefor $1,070; that March 31, 1928, agreeably to the contract, they executed and delivered to plaintiff three notes, due, $260, May 15, 1928, $405, October 1, 1928 and $405, October 1, 1929; that April 6, 1928, the tractor was delivered at Denver, and immediately taken by defendants to their ranch, where they endeavored to make use of it, but unsuccessfully; that pursuant to a provision of the contract of purchase defendants notified

plaintiff of the defective machine, its apparent unsuitability and general failure to operate; that plaintiff made many efforts to remedy the defects and make the tractor work, but to no avail; that while plaintiff was still engaged in its endeavors to remedy the defects, having the motor in its possession for that purpose, the first note became due, and whether it should then be paid was in dispute; that in the interest of receiving payment plaintiff made assurances of early repair and return of the tractor and of its successful operation, and relying thereon, May 31, 1928, defendants paid the matured note; that the tractor was not returned until about the middle of June, shown to be late for preparation of ground for planting; that as before, the machine failed to work satisfactorily and was and continued to be of no use to defendants, who, finally despairing, notified plaintiff to take it, at the same time demanding return of their unpaid notes (sued on here). Plaintiff declined to consider retaking the tractor or to surrender defendants' notes. It further appeared that payment of the second note was formally extended, but such extension was entered into while plaintiff was still giving assurances that the tractor would be made to work effectively.

Points urged on review may be grouped as follows: (1) That the contract precluded recovery of damages; (2) that since defendants did not return the tractor to Denver, where they received it, their liability on the purchase notes continued; and, (3) that by virtue of the written extension agreement of one of the notes in suit defendants are estopped to interpose any defense or counterclaim in the action.

1. The provision of the contract relied on as to this point reads: "It is hereby expressly agreed that all claims for damages against the company by reason of the nonperformance of the machinery above are hereby waived." We have said of such agreements that: "Courts are not disposed to construe contracts so as to

work a forfeiture of rights, except in very clear cases, and they readily seize upon any circumstance growing out of the contract by which to avoid the forfeiture, and leave the merits of the case open to investigation.'' *Case Threshing Machine Co. v. Tate,* 70 Colo. 67, 197 Pac. 764. Considering that here plaintiff's agents were cognizant of defendants' requirements as to tractor service, and in the interest of a sale represented that the tractor being sold was suitable, and that on fair and protracted trial the machine not only failed to operate, but could not be made to work by the company's mechanics, we think the court was bound to give attention to defendants' claim that they had been damaged. The court grounded the question of recovery on the warranty provision of the contract, which reads that ''the company warrants the machinery ordered herein to be well made, of good material, and with proper use and management to do as good work as any other machine of the same size manufactured for a like purpose.'' The testimony warranted the conclusion that from the beginning the machine did not work, and plaintiff's own tractor service man after extended experimentation was not able to make it operate satisfactorily. Indeed, plaintiff offered no testimony otherwise. The jury was temperate in the award made to defendants on their counterclaim. Contemplated in the sum returned, $454.70, would be the note paid, $262.50, and other definite items of expenditure made pursuant to plaintiff's agents' inducement in an earnest effort by defendants to cause the machine to work.

 2. Defendants offered to return the tractor and demanded surrender of their notes. Plaintiff declined that disposition of the controversy and instituted action on the notes, necessarily inconsistent with the theory that return of the machine to the place mentioned in the contract would have satisfied the company and closed the incident. Remedies otherwise open to defendants are not to be withheld simply because they failed to resort to a meaningless gesture. The point has arisen

often and in many jurisdictions, and generally in just such a case as this. We have not been cited to a case of similar facts where the holding differs from the view adopted by the trial court. "After defendant notified plaintiff in effect that it would not rescind the contract and that it would hold him to its terms, he was not bound to return the machine to the agent at Columbia. It amounted to a waiver of a return of the machine." *Palmer v. Reeves & Co.*, 139 Mo. App. 473, 122 S. W. 1119. "The delivery would be useless, and the law does not require useless or unnecessary things." *Padden v. Marsh*, 34 Iowa 522. In an analogous situation we have said that "the law does not require steps to be taken which, it is manifest, would be useless." *Morgan v. King*, 27 Colo. 539, 63 Pac. 416.

3. It is true that at the time defendants renewed one of the notes in suit they were apprised of the defects in the machine, and it would seem that ordinarily the renewal would operate to estop them from defending on account of breaches of warranty. But here we conceive the case is altered by other circumstances disclosed by the record. The notes were given in consideration of the delivery of a tractor, to be of a certain standard of efficiency, failing which, the company was to repair defective parts or remedy deficiencies. That defects existed is not questioned, and that the company was attempting to carry out its contract to make repairs and remedy defects at the time of the renewal, is clearly shown. We think the court rightly held that renewal of the note did not preclude defendants. In a similar situation, and where our views are admirably expressed, the Georgia Court of Appeals said: "We understand that where renewal notes are given under such circumstances as these, there is no implication of law that the parties are thereby attempting to adjust the past differences or to shut off defenses arising out of past complaints, but that the transaction is to be understood merely as extending the time within which each of the parties is to perform his

contract. To state it a little differently and more specifically, as applied to the case before us: the plaintiff's breach of warranty was not unconditionally consummated at the time the renewal note was given, for the reason that the warranty and the concurrent promise on the part of the plaintiff was not merely that there would be no defects, but that if there were defects the plaintiff would repair and remedy them. Until the plaintiff had had full and reasonable opportunity, according to the terms of the contract, of remedying any deficiencies, the breach was not complete, and did not give a cause of action or defense to the defendants." *McDaniel v. Mallary Brothers Machinery Co.*, 6 Ga. App. 848, 66 S. E. 146.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE ALTER concur.