The McCaskey Register Company, Appellant, v. Edgar H. Little, Appellee.

Opinion filed June 5, 1929.

ROBERT E. McGLYNN, for appellant.

LOUIS BEASLEY and EDWARD C. ZULLEY, for appellee.

MR. JUSTICE NEWHALL delivered the opinion of the court.

Appellant sued appellee in the court below on a promissory note signed by appellee, which was given in part payment for a combination physician's file and

desk, under a written order or contract signed by appellee and delivered to one of appellant's salesmen.

The written sales contract, which appellee signed, requested appellant to ship to appellee, at East St. Louis, Illinois, the combination desk and file, together with certain supplies, for which appellee agreed to pay $310, reciting that there was $25 cash paid down, and the balance to be paid in fifteen monthly instalments of $19 each, beginning 30 days from date.

The contract was dated September 1, 1926, and on its face contained the following statement:

"No goods sold on trial. It is expressly agreed that this order and conditions on the back cover all agreements between the parties, and cannot be altered or varied by any verbal agreement or understanding. Duplicate to purchaser."

On the back of the contract was indorsed the following guarantee:

"All defects in manufacture to be made good for a period of one year, and if said system should get out of order through ordinary and proper use during period of one year, all necessary repairs and adjustments to be made without charge if the system is returned to the factory; and the company agrees to return said system after repair to original point of shipment and pay shipping charges one way. Holder of guarantee to pay charge one way. Delivery to be F. O. B. Alliance, Ohio. . . . We Make Positively No Other Guarantee as to Any of Our Products Other Than Made Herein."

The case was originally tried in a justice court, where judgment was rendered in favor of the plaintiff, and, on appeal to the city court and trial before a jury, a verdict was rendered in favor of appellee, and appellant prosecutes this appeal.

Appellant filed its affidavit in the city court claiming a balance due on the contract of $273, with interest.

Appellee filed an affidavit of merits, in which he claimed that he had a valid claim for damages against appellant arising out of the breach of warranty in the purchase of the desk or file, and for money paid appellant during the time he relied upon the promises and representations made by appellant that said alleged warranty would be made good by appellant at its expense, and claimed that there was due $139, representing the money which appellee had paid to appellant on account of said contract; that appellee's claim was based upon the alleged facts that appellee purchased through appellant's traveling salesman, the duly authorized agent of appellant, the desk in question, without appellee having an opportunity to see the desk prior to its purchase; that appellant's agent warranted that said desk, when delivered to appellee, would be in first-class condition; that, in the event of any defects in said desk, appellant would, at its own expense, remedy the same within one year, or would take back the goods and refund to appellee all moneys paid by him; that appellee relied upon these representations, made the payments in question, but that appellant failed to make good its warranty, and appellee claimed the right to a refund of the money, which had been paid to appellant on the purchase price of said desk.

Appellee testified that he did not see the desk before purchasing it; that the same was purchased through a salesman of appellant, who came to his office September 1, 1926; that the desk was later delivered at his office, about 10 days thereafter, at a time when he was not in the office; that appellee first saw the desk on September 10, and stated that the leaves of the desk were scratched; that part of the shifting apparatus on the desk was broken; that some of the drawers were warped and would not slide; that the material of the desk was worm-eaten, and had the appearance of being

secondhand or used; that, against objection of counsel for appellant, appellee was permitted to testify that, at the time he purchased the desk, the salesman orally guaranteed that, if the desk was not first-class and new in every respect, appellant would make it right or return all moneys paid by appellee.

Appellee further testified, over the objection of counsel for appellant, that, after he examined the desk on September 10, he wrote appellant to send their agent back, and that the salesman, who had made the sale, returned to his office, and told appellee that he, the salesman, would send and get another desk for appellee, and also told him not to pay any further money until the desk arrived at appellee's office. Appellee kept the desk in his office and used the same, and on at least one occasion ordered additional supplies to use in connection with the register system, for which purpose the desk was used to keep accounts of appellee.

Appellee further testified that he sent remittances of $57 on July 29, 1927, and $57 on December 7, 1926; that, after appellee had been sued before a justice of the peace, he mailed a check for $95 to appellant, which represented the instalments then due on the note, but evidently from the record it appears that the same was either not accepted by appellant or that payment on the check was subsequently stopped by appellee.

On cross-examination, appellee testified that the first time he saw the desk was on September 10; that the salesman came back about September 14; that appellee admitted signing the certificate of installation (offered in evidence as Exhibit "G"), which on its face purported to show the date that the order was given, the date entered by appellant on its books, and the date of shipping, which was September 20, 1926, with a further statement of the amount of the contract, and the terms thereof. On the back of this exhibit, which appears to be dated October 5. 1926. is the following:

"Certificate of Installation.

"The agent will have the purchaser sign the following certificate and return the same without delay to The McCaskey Register Company.

"To the McCaskey Register Company.

"The Register purchased of your company has been installed and inspected by your agent, Mr............ He has given satisfactory instructions on operation of the systems.

(Signed)   Edgar H. Little, Purchaser."

Appellant contends that the trial court erred in permitting appellee to testify as to the declarations and statements of appellant's salesman, whereby appellee sought to change and to vary the terms of the written contract and guaranty, which appellee had signed, and which contained the terms of the purchase contract. No competent proof was offered by appellee tending to show that appellant's salesman had any express or implied authority to change or vary the terms of the written contract. The contract expressly provided against the making of any other guaranty other than the one indorsed on the purchase contract.

The alleged parol agreement of appellant's salesman, as testified to by appellee, was incompetent evidence, and was insufficient to bind appellant or vary the terms of the written agreement. (*Bixler v. Henson*, 197 Ill. App. 101.)

One, who seeks to enforce a warranty imposing mutual and dependent obligations and covenants, must show compliance upon his part. (*Eichelroth v. Long*, 156 Ill. App. 108.)

Under the express terms of the written guaranty, if for any reason the goods purchased by appellee were defective, it was the duty of appellee to return the same to appellant's factory for proper repairs and adjustment. All of the alleged defects in the desk equipment were apparently visible and open to inspection at the time he signed his certificate of installation in October,

1926, and yet he continued to use the equipment thereafter, and to make payments on his purchase for a period of more than a year.

Section 48 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 51, provides as follows:

"The buyer is deemed to have accepted the goods . . . when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

Section 49 of the same Act, Cahill's St. ch. 121a, ¶ 52, also provides as follows:

"In the absence of an express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

In providing for the remedies of a buyer for breach of warranty, section 69 of the same Act, Cahill's St. ch. 121a, ¶ 72 (3), provides:

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind."

In *Goodlatte v. Acme Sales Corp.*, 229 Ill. App. 610, on page 614, it was held:

"Where goods have been received by the buyer and retained by him without objection for a substantial period of time, it is generally a question of fact for the jury as to whether the time that has elapsed before the complaint is made is a reasonable time, but where all reasonable minds would reach the conclusion that

the goods were retained an unreasonable length of time before any complaint was màde, it then becomes a question of law for the court. (*Eureka Waist Co. v. Herrick Bros. & Co.*, 226 Ill. App. 316.)"

At the close of all the evidence, appellant moved the court for an instructed verdict in favor of appellant and, in view of the evidence offered by appellee in defense, we are of the opinion that the court erred in not directing a verdict for appellant.

For the reasons aforesaid, the judgment of the city court of East St. Louis is reversed and the cause remanded for a new trial.

*Reversed and remanded.*